FILED
2013 Apr-16  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALBERT J. ISAAC,                        )
ROSETTA W. ISAAC,                       )
                                        )
            Plaintiffs,                 )
                                        )
vs.                                     )          Case No. 2:12-cv-2030-TMP
                                        )
RMB, INC.,                              )
CLOUD & TIDWELL, LLC,                   )
                                        )
            Defendants                  )

DISCOVERY ORDER

This matter came before the court for hearing on five discovery motions filed by the parties between March 7 and March 12, 2013.  The defendants have each filed a motion to compel the plaintiffs to reconvene their depositions (Docs.  37 and 39), while the plaintiffs have filed three motions seeking sanctions against the defendants (Docs. 40, 41, and 42).

A.  Defendants' Motions

The defendants' motions assert that the plaintiffs obstructed the taking of their depositions with frivolous objections and refusals to answer questions.  The depositions were started on February 21, 2013, just before the discovery deadline of March 1, 2013.  When the defendants proposed that the depositions be recessed and reconvened at a later time in the presence of the undersigned, the plaintiffs agreed.  Then, on February 27, when dates were obtained to reconvene the depositions *after* the discovery cut-off, they refused to participate without a court order.

1

The transcript of Mrs. Isaac's aborted depositions is attached as an exhibit to defendant RMB's motion. The following are representative of the exchanges that occurred during the deposition:

Q.    You understand I'm going to ask you some questions about the lawsuit
      you flied; right?
A.    Yes.
Q.    Okay.  Have you ever given a deposition before?
A.    Yes.
Q.    Okay. When was that?
A.    I object.  That's irrevelant (sic) to the subject matter.

                                * * *

Q.    So with that explanation, it's not really...you know, I don't know if it's
      relevant or not because I don't know the answer to your question.  So I
      can't agree with you and let's just move on.  I'll ask you again.  When
      have you given a prior deposition?
A.    Again, I say I object. That's irrevelant to the subject matter.
Q.    Okay. So you're refusing to answer that question?
A.    I object.
Q.    Well, I understand you've objected. But are you refusing to answer the
      question?
A.    Yes.
Q.    Okay.
A.    It's not revelant (sic) to the subject matter.
Q.    I understand that's your answer.  How many times have you given a
      deposition before?
A.    I object.  That's irrevelant (sic) the subject matter.

                                * * *

Q.    Okay. Have you ever filed a lawsuit before?
A.    I object. That's not revelant to the subject matter.

                                * * *

MR. WILLIS:      You're refusing to answer any questions in regards to when
                 you say relevance; is that a fair statement?
THE WITNESS:     Yes.
MR. WILLIS:      Okay.

2

Q.  (By Mr. Moore)    Have you ever sued a debt collector before?

A.         I object. That's irrevelant to the subject matter.

Q.         Okay. Why do you think that's irrelevant?

A.         I object.  That's irrelevant to the subject matter.

Q.         But I'm asking why you think it's irrelevant.

A.         Because I object to it because it's not related to the subject matter.  It's not related to the suit that's at hand.

Q.         Okay.  So your prior experience in lawsuits against debt collectors, you don't think has any possible relationship to the this present case?

A.         That's why I object to it.

* * *

Q.         Do you know who Ms. Elmore is?

A.         Yes.

Q.         Who is that?

A.         That's my mother-in-law.

Q.         Okay. Have you ever assisted her with her financial affairs?

A.         That is not -- I object.  That is not revelant to the question at matter.

Q.         Okay. One of the reasons that we think -- well, one of the reasons we think it's relevant is the accounts that my client was collecting pertained to Ms. Elmore.  So I do think it's relevant if-- I'm not saying you had financial responsibility for her.  But my question is if you've helped keep up with her affairs, helped her pay bills, helped her manage her affairs. It's relevant because those were the bills we were recollecting.  Will you reconsider your objection?

A.         The question has already -- I object. The question has already been asked and answered.

Q.         Well, now, it hasn't been answered because you objected to it.

A.         It has been answered.

Q.         Well, what was the answer again?

A.         It has been already asked and answered.

Q.         Please -- I don't – I honestly am not aware of what the answer was. Would you please just tell me again?

A.         The question has been --like– I state again, I object because the question has already been asked and answered.

Q.         Have you -- I honestly – Ms. Isaac, I really do not know what the answer to this question is.  Have you assisted Ms. Elmore with keeping up with her bills or assisted her in trying to pay her bills in the past, just yes or no, please?

A.         The question – I object because the question has already been asked and answered.

Q.         Do you think it has been asked and answered today?

3

A.      No, not today, but it has already been asked, and it has already been
        answered.
Q.      And when –
A.      So I object to that.
Q.      And when was that that I asked and answered -- or I asked this question
        before?
A.      The question has already been asked and answered.
Q.      But not today; right?
A.      Not today.
Q.      When was it that I have already asked this question?
A.      I object to the question because it has already been asked and answered.
Q.      Ms. Isaac, are you prepared to answer any questions today?
A.      Yes.
Q.      What are those questions that you'll answer?
A.      I don't know.  You have not asked me.
Q.      In the prior depositions you've given, did you act as your own attorney in
        those cases as well?
A.      I object because it's not relevant to the subject matter.

* * *

Q.      ... So my question is: You're not aware of any notes that you could go and
        look at that would change your testimony after you leave this room today;
        right?
A.      I don't know.
Q.      So there may be some?
A.      I don't know.  I object because I don't know.
Q.      Okay.  If between now and trial you were to find some of those notes and
        look at them, would you give me copies of those notes at the same time
        you find them?
A.      I have to object because I don't know what I would do.
Q.      Okay.  Do you know whether or not the law would require you to give me
        those copies if I've sent you a document request saying, "Hey, let me see
        all your records."  It's just a question of whether or not you know. It's
        okay if you don't know.  You don't have to object because you don't
        know.  You can just tell me whether you know.
A.      Mr. Moore, I object to your question, but if the judge asks me, then I
        would have to do that.
Q.      Okay.  Well, can we agree that in your deposition notice I asked that you
        bring any documents relating to any communications, phone calls, or
        conversations with my client that you have; right?  I asked for that in No.
        5; right?
A.      Yes.
Q.      Okay.  Did you even look for any before you came here today?

4

A.     I object because the question has already been asked and answered.

Q.     So my question is not whether you brought any.  My question is: Did you look for those documents specifically?

A.     I object because the question has already been asked and answered.

Q.     What was the answer?

A.     I object because the question has already been asked and answered.

Q.     Has somebody told you that an objection based on asked and answered is an appropriate objection to make in a deposition?

A.     I object to your question, Mr. Moore, because it's not revelant to the subject matter, and it's privileged.

* * *

Q. (By Mr.Moore)     Ms. Isaac, are you willing to answer my last question about what  you think my client did that got them sued in this case?

A.     Mr. Moore, I object to your question.  I object because it's not relevant to the subject matter, and it's -- and Mr. – what's your name again?

* * *

Q.     ... In your lawsuit you make a claim saying that you were harassed.  And that's why -- in your -- just your explanation in general what it means for you to be harassed.

A.     I object to the question. It's irrelevant to the subject matter right now --

Q.     Well --

A.     -- at this moment.

Q.     Well, there's no – there's no chronology.  You can't -- with respect, you can't tell me when I can ask a particular question.  I'm entitled to ask questions about your entire lawsuit.  You can't tell me I can't ask it now and can only ask it later.  My question is, you've made a claim in your lawsuit saying that you're harassed.  I want you, if you can, to explain  to me what it means when Ms. Rosetta Isaac says "I'm harassed," what that means to you.

A.     I object because that question has already been asked and answered.

Q.     Well, but you answered it in regards to the tone of my co-defendant counsel's voice.  I'm talking about harassment in this lawsuit, not any claim of harassment that you have from the conversations we're having today.  I'm talking about the harassment that you've sued my client for and what that means to you.  I need to be able to understand that.

A.     I object, Mr. Moore, because that question has already been asked, and it has already been answered in a court of law.  It has already been asked, and it has already been answered. I would say that that question has already been answered.

Q.     When was it answered in a court of law?

5

A. Before Judge Putman (sic).

Q. Ma'am, that – first of all I don't know – don't remember me asking you questions about describing the harassment you've claimed in your lawsuit. But – but even if I did, that's not sworn testimony that we can use in this case.  I need you to be able to answer that question,  please.

A. Mr. Moore, that question -- that answer has already been fulfilled.

Q. Let me ask you this.  And I'm curious--

A. And I object to you asking it again.

Q. I know.

(Doc. 37-1).  At that point in the deposition, counsel for RMB suggested that they stop the deposition and agree to reconvene it at a later time when the court could be present and preside at the deposition, and Ms. Isaac agreed.  Consistent with that agreement, the deposition was terminated and counsel began making efforts to ascertain alternate dates for reconvening the depositions of the Isaacs.  Ultimately, on February 27, one day before the discovery deadline in the scheduling order was due to expire, counsel proposed in a letter to the Isaacs the dates of March 6 or March 15 to reconvene the depositions.  In a response dated March 1, the Isaacs objected to reconvening the depositions because the discovery deadline of February 28 had expired.  Both defendants RMB and Cloud & Tidwell have filed their separate motions to compel the plaintiffs to reconvene their depositions and to sanction them for their refusal to do so.

  The court has set out at length the substantive portions of Ms. Isaac's deposition to demonstrate what the court is convinced is a deliberate strategy by the plaintiffs to obstruct discovery.  Although *pro se,* the plaintiffs are not inexperienced litigators.  They have filed and prosecuted at least four other lawsuits in this court asserting claims under the Fair Debt Collection Practices Act, and they have succeeded in obtaining a money settlement or judgment

in at least three of them.[1]  At least Ms. Isaac has been deposed before in one of those cases.  No

reasonable litigant could believe that the objections stated by Ms. Isaac were well founded under

the Rules.  Rule 26(b)(1) expressly describes the scope of relevance in discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense—including the existence, description, nature,
> custody, condition, and location of any documents or other tangible things and the
> identity and location of persons who know of any discoverable matter.  For good
> cause, the court may order discovery of any matter relevant to the subject matter
> involved in the action.  Relevant information need not be admissible at the trial if
> the discovery appears reasonably calculated to lead to the discovery of admissible
> evidence.

Under this standard of relevance, questions about Ms. Isaac's litigation history, documents

relating to the action, and her notes of events, as well as her understanding of her claim of

harassment, were all well within the scope of relevant discovery.  Information that is relevant for

discovery need not itself be admissible at trial as long as it is reasonably calculated to lead to

admissible evidence.  It is clear that her repeated and adamant objections and refusal to answer

were not designed to preserve legitimate objections to questions, but to obstruct and frustrate the

defendants' right to learn the facts she possessed.  Under Rule 26(b)(1), Ms. Isaac could not

reasonably have believed that her objections were proper.

Even if the objections could be viewed as legitimate, the refusal to answer cannot be.

Rule 30(c)(2) clearly mandates that

> An objection at the time of the examination—whether to evidence, to a party's
> conduct, to the officer's qualifications, to the manner of taking the deposition, or
> to any other aspect of the deposition—must be noted on the record, but the
> examination still proceeds; *the testimony is taken subject to any objection*.  An

---

[1]  See Isaac, et al., v. Allied Interstate Inc et al., 2:08-cv-01506-SLB; Isaac, et al., v. NCO Group, Inc., et al., 2:09-cv-01491-AKK; Isaac, et al., v. Northeast Credit & Collections, Inc. et al., 2:10-cv-00143-RDP; Isaac, et al., v. Ingram Law Offices, LLC, 2:10-cv-01352-PWG.

> objection must be stated concisely in a nonargumentative and nonsuggestive manner. *A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).* [Italics added].

The rule makes plain that, except for certain very narrow grounds, testimony at depositions proceeds notwithstanding the objection. A deponent can refuse to answer a question only if necessary to preserve a privilege, enforce a limitation on discovery imposed by the court, or to present a motion for sanctions due to abuse at the deposition. A run-of-the-mill relevance objection does not allow the deponent to refuse to answer the question. Because Ms. Isaac obstructed the taking of her deposition, the defendants' motions for an order compelling both she and her husband to reconvene their depositions and to answer appropriate questions put them will be GRANTED. The parties are DIRECTED and COMPELLED to reconvene the depositions of the plaintiffs within the next twenty (20) days. Unless otherwise agreed by the parties, the reconvened depositions shall be conducted in the third floor jury room at the Hugo L. Black U.S. Courthouse, Birmingham, Alabama.

Defendants also ask the court to sanction the plaintiffs for refusing to reconvene their depositions after agreeing to do so at the aborted depositions on February 21. Plaintiffs responded that they alone could not agree to reconvene their depositions after the discovery deadline expired. They point, correctly, to Rule 29, which provides:

> Unless the court orders otherwise, the parties may stipulate that:
>
> (a) a deposition may be taken before any person, *at any time* or place, on any notice, and in the manner specified—in which event it may be used in the same way as any other deposition; and

(b) other procedures governing or limiting discovery be modified—*but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery*, for hearing a motion, or for trial.  [Italics added].

From this it is clear that an agreement among the parties to extend the time for taking a deposition is allowable, except when doing so "would interfere with the time set for completing discovery."  Plaintiffs correctly understood Rule 29 as requiring court approval for an agreement to continue with discovery after the discovery deadline expired.  While that approval could have been obtained easily, the court cannot sanction the plaintiffs for refusing to do something not allowed by the Rules.

Although the plaintiffs cannot be sanctioned by refusing to reconvene their depositions without court approval, Ms. Isaac must bear the costs incurred as a result of her unreasonable refusal to cooperate with the taking of her deposition as originally scheduled.  Rule 30(d)(3) requires parties to cooperate reasonably with the taking of depositions and provides a sanction for parties or deponents who unreasonably annoy or oppress another party or deponent.  The rule states:

*(3) Motion to Terminate or Limit*.

*(A) Grounds*.  At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

*(B) Order*.  The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.

9

*(C) Award of Expenses*.  Rule 37(a)(5) applies to the award of expenses.

Although it is true that Rule 37(a)(3)(B)(i) authorizes the court to compel a deponent to answer a question at a deposition, the instant case goes further than a mere refusal to answer a question.  It is not simply a disagreement over a single question or category of inquiry.  Rather, the deposition responses of Ms. Isaac demonstrate a wholesale, bad-faith attempt to obstruct the taking of the deposition.  Over more than 30 pages of deposition transcript, she objected to and refused to answer virtually every substantive question addressed to her.  Such a wholesale obstruction not only annoys but oppresses the party attempting to take the deposition by wasting that party's time and money in a failed attempt to obtain authorized discovery.  A party deponent cannot be allowed to unreasonably increase the expense of discovery by obstructing it.  If Ms. Isaac had properly cooperated with the taking of her deposition as originally scheduled, there would be no need for the instant motions.  Thus, when viewed as a motion for sanctions for obstructing the original deposition, the granting of defendants' motions authorizes the court to require Ms. Isaac to pay the costs associated with obtaining this Order.  Rule 30(d)(3) expressly adopts Rule 37(a)(5),  providing that, "If the motion is granted… the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion,… to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Accordingly, not later than ten (10) days after this Order, the defendants may file with the court and serve on plaintiffs such proper proof of the time and expenses (including attorneys' fees) incurred by them in filing the instant motions to compel and obtaining this Order.  Within

ten (10) days after service of the proof upon the plaintiffs by first-class mail, Ms. Isaac[2] may file a response showing why she should not be required to pay the costs, fees, and expenses associated with the instant motions to compel.

      B.  <u>Plaintiffs' Motions for Sanctions</u>

      The plaintiffs also have filed three motions for sanctions against the defendants.  In the first motion, Document 40, plaintiffs seek sanctions against defense counsel Neal Moore and his firm because Moore filed the above-discussed motion to compel (Doc. 37), which they contend is baseless and frivolous and simply harassment of them.  In particular they argue that counsel failed to file a motion under Rules 30(d)(3), 30(c)(2), and 26(c) to reconvene the depositions. While the court agrees that Rule 29 required court approval to reconvene the depositions beyond the discovery deadline, the reason the original depositions were not completed was Ms. Isaac's clear obstruction of her deposition.  Because the motion to compel was properly filed to seek an order requiring the plaintiffs to reconvene their depositions and to answer appropriate questions, it was not baseless, frivolous, or harassing.  If anything, the instant motion is baseless and frivolous for the reasons explained above, and it is DENIED.[3]

      Plaintiffs' second motion seeks sanctions (Doc. 41) against defendant Cloud & Tidwell for failing to comply with the requirement in the court's Rule 16(b) scheduling order (Doc. 14) that the parties confer on whether they wish to consent to allow the undersigned to exercise full dispositive jurisdiction under 28 U.S.C. § 636(c).  It is clear that all of the parties have now consented to magistrate judge jurisdiction, obviating the need to confer on that question.

---

[2]  As Mr. Isaac's deposition never started and there is no proof that he would have engaged in the same obstruction as did Ms. Isaac, the court has no factual basis for imposing a sanction upon him.

Because a decision by the parties was reached concerning consent to magistrate judge jurisdiction, no party suffered prejudice from the failure of Cloud & Tidwell to confer. The motion for a sanction of default judgment against the defendant is DENIED.

Plaintiffs' third and final motion for sanctions (Doc. 42) contends that defendant RMB failed to serve them properly with RMB's opposition to plaintiffs' motion to compel filed in October 2012 (Doc. 17). They assert that RMB sent the copy of the opposition to them by email even though there is no agreement by them to be served with filings by email. Although they seek sanctions under Rule 37, they have not identified how they were harmed or prejudiced. The court denied plaintiffs' motion to compel in an Order dated December 14, 2012 (Doc. 32) and plaintiffs did not raise any request for sanctions at that time.[4] Because the issues associated with that motion have been resolved, the instant motion is DENIED as moot.

DONE this 16th day of April, 2013.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE

---

[3]  The fees and expenses associated with opposing this motion are essentially the same as those incurred filing the defendant's  motion to compel, and will be covered by the court's resolution of defendant's request for expenses from that motion.

[4]   The court notes that plaintiffs filed an "Opposition" to defendant RMB's response to their motion to compel, but made no mention in the opposition to any service problem or request for sanctions.  See Doc. 21.  Plaintiffs also file a "Notice" in relation to RMB's response, saying that plaintiffs informed defense counsel by voicemail that they had not received a copy of RMB's response to the motion to compel.  See Doc. 22.  Again, there is nothing in the "Notice" seeking sanctions from RMB.