FILED

2014 Mar-27  AM 08:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALBERT J. ISAAC and                     )
ROSETTA W. ISAAC,                       )
                                        )
          Plaintiffs,                   )
                                        )
v.                                      )          Case No. 2:12-cv-2030-TMP
                                        )
RMB, INC., and                          )
CLOUD & TIDWELL, LLC,                   )
                                        )
          Defendants.                   )

## MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment filed by the plaintiffs, Albert J. Isaac and Rosetta W. Isaac (doc. 44), and the cross motions for summary judgment filed by defendants, RMB, Inc., ("RMB") and Cloud & Tidwell, LLC ("Cloud & Tidwell").   (Docs. 59 and 62).   The motions are supported by evidence and have been briefed.[1]   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

---

[1]      Although RMB did not file a brief in opposition to the plaintiffs' motion for summary judgment, this defendant, in its own motion for summary judgment, raised the "bona fide error" defense, addressed below in text, and further addressed plaintiffs' other claims.   (Doc. 59). The defendant's failure to file any opposition to plaintiffs' motion constitutes an agreement as to allegations of fact, but does not create any presumption as to any conclusions of law set forth by the plaintiffs.   Moreover, the court construes RMB's motion as both a motion and as an opposition to the plaintiffs' motion.   To do otherwise would lead to the nonsensical conclusion that both plaintiffs and RMB are entitled to summary judgment on the same claims at the same time because the plaintiffs have presented facts that lead to the conclusion that RMB placed collection calls in violation of the FDCPA, while RMB has demonstrated that it is not liable for any FDCPA violations complained of because of the "bona fide error" exception.

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

2

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   The substantive law will identify which facts are material and which are irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Id. at 248.   "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   Id. at 249.   His guide is the same standard necessary to direct a verdict:   "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).   However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).   Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.   Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).   Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.   Anderson, 477 U.S. at 255.   The non-movant need not be given the benefit of every

3

inference but only of every reasonable inference.   <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## **FACTS**

For purposes of the defendants' pending motions for summary judgment, the evidence is viewed in the light most favorable to the plaintiffs as nonmovants.[2]   In this case, as defendant Cloud & Tidwell noted, the material facts are not in dispute.   (Doc. 71, p. 1).   By declining to respond to the plaintiffs' motion, defendant RMB also has conceded that the plaintiffs' allegations regarding telephone calls from RMB are not in dispute.   The parties have essentially agreed that the following events gave rise to the instant complaint.

Plaintiffs Albert J. Isaac and his wife, Rosetta W. Isaac, reside together in Birmingham, Alabama.   Both defendants admit that they placed telephone calls to the Isaac residence seeking to collect debts that were not owed by the Isaacs, and that the calls continued after the debt collectors received letters from the Isaacs that requested the callers cease and desist calling their home.[3]   The telephone calls made to the Isaacs' residence by Cloud & Tidwell were made in

---

[2]     For purposes of the motion filed by plaintiffs, of course, defendants are entitled to have the facts viewed in the light most favorable to them.

[3]     While the claims against both defendants arise under the same statutory scheme and allege the same causes of action under state and federal law, there appears to be no other connection between the defendants or their conduct.   In other words, the Isaacs have simply filed one complaint against two wholly unrelated "debt collectors" who made separate attempts to collect separate debts.   These claims should have been filed as separate actions.   Accordingly, it appears that the defendants are misjoined, although neither defendant has raised any issue relating to joinder.   The court may address, at a later time, whether the claims require severance or whether plaintiffs may be assessed the cost of a separate filing fee for each defendant.

reference to debts incurred by Elva Washington, a woman unknown to the Isaacs, and appear to have been made based on an erroneous record of Ms. Washington's number.   The calls made to the Isaacs' residence by RMB were made in reference to several debts owed to St. Vincent's Hospital incurred by the Isaacs' adult daughter, Ashley, and by Mr. Isaac's mother, both of whom provided the Isaacs' phone number in connection with the debts.

The plaintiffs assert that the defendants are liable for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*   Plaintiffs further assert that the calls were intended to harass them in violation of the FDCPA and in violation of Alabama Code §13A-11-8(b)(1)(a)(b) and that the defendants negligently supervised the employees responsible for stopping the calls.

### Calls placed by RMB

RMB, a debt collector for purposes of this action, made calls to the Isaac residence in an attempt to collect debts owed to RMB's client, St. Vincent's Hospital.   One of the debts was incurred by the Isaacs' adult daughter, who listed her parents' phone number on her medical forms when she was treated at St. Vincent's.   The other debts RMB sought to collect were incurred by Mr. Isaac's mother, Mary Elmore.   When RMB made calls to Ms. Elmore at the assisted living facility where she was living, Ms. Elmore gave RMB Mr. Isaac's home telephone number.   She repeatedly told RMB that her son handled her financial matters, and advised RMB that they had her permission to contact him about the debt.   She further told RMB that Mr. Isaac would pay $25 a month toward the debt from her money.   (Doc. 59, Ex. B).

After RMB called the plaintiffs' home for the first time on July 1, 2011, the plaintiffs sent a certified-mail letter dated July 8, 2011, demanding that RMB cease calling their home to collect

the debt.  The certified mail was received by RMB on July 11, 2011.  At that time, the RMB employee specially trained to handle "case and desist" letters was on maternity leave, and the task of handling the letter fell to RMB's chief compliance officer.  She too, however, became ill unexpectedly.  (Aff. of K. Nunley, Doc. 59-1, ¶¶ 26-30).  The absence of these two RMB employees unexpectedly slowed the process of handling the cease-and-desist letter from the usual 24-48 hours to 17 days.  (Doc. 59-1, ¶ 31).  Between July 11 and July 29, 2011, RMB called the Isaacs 18 more times, including five times on July 25 alone.[4]  (Doc. 44-1, pp. 4-5).  Once the letter was processed and the Isaacs' number was placed on RMB's "do not call" list, no further calls were made from RMB to the plaintiffs after July 29, 2011.

None of the 18 calls RMB placed to the Isaacs' phone during the 17 days when the cease-and-desist letter was not processed resulted in any conversation between any person at the Isaacs' residence and any RMB employee.  Only six of the calls were answered.  Those six calls were answered by Mr. Isaac, who stated: "This telephone call is being recorded.  Hello.  How may I help you?"  (Doc. 46, Ex. 3; Doc. 44, Ex. 7).  RMB's automated calling system was designed to disconnect when the call was not interpreted as having been answered by a "live person."  (Doc. 59-1, ¶ 15).  The system's "answering machine detection software" works on the assumption that most "live" answers are a simple and short "Hello" followed by a pause, while the typical answering machine is a longer greeting and instruction on leaving a message.  Because Mr. Isaac's telephone answer was relatively long compared to a more traditional greeting, it was

---

[4]     RBM's evidence asserts that RMB's automated dialing system does not allow for more than two calls per day to the same telephone number, and those calls are at least four hours apart.  However, taking the plaintiffs' evidence as true, they have shown that RMB called their home five times on July 25 and three times on July 28, 2011.

interpreted by the automated calling system's "answering machine detection software" to be an answering machine.  (Doc. 59-1, ¶ 14).   When Mr. Isaac answered the calls and repeated his statement about the call being recorded, the automated system terminated the calls without leaving any message.  (Doc. 59-1, ¶ 18).  The system is designed to terminate calls that indicate they have been answered by a machine in order to avoid "inadvertent and unlawful disclosure of the existence of the debt or the debtor's personal information to a third party."  (Doc. 59-1, ¶ 20).  RMB further has demonstrated that, when the automated system determines that calls are answered by a "live person," the calls are connected to a "live collector," and that the collector is trained to make disclosures regarding the purpose of the call and to inform the person called that information obtained will be used for that purpose.   (Doc. 59-1, ¶¶ 15-17).

### Calls placed by Cloud & Tidwell

Cloud & Tidwell first contacted the plaintiffs on July 25, 2011, in connection with a debt they were attempting to collect from a third party who is unknown to the plaintiffs and who was identified by Cloud & Tidwell as Elva Whitman.   Calls to the Isaacs' telephone were the product of a transcription error.   The telephone number for the actual debtor, Elva Whitman, was erroneously transcribed into Cloud & Tidwell's automated dialing system (Aff. of Cloud, Doc. 62-1, p. 4), and the resulting erroneous number belonged to the Isaacs, even though all of the remaining information associated with the erroneous number (name and address of debtor, amount owed, and creditor) belonged to Elva Whitman.   In response to the calls, plaintiffs sent Cloud & Tidwell a certified letter dated July 29, 2011, asking that the collection calls cease.   The letter written by the Isaacs was delivered to and signed for by Brian Cloud, a partner at the defendant law firm, on August 1, 2011.   Cloud then gave the letter to an employee whose duties included placing

7

the numbers of those who had written cease-and-desist letters on a "do not call" list.   (Doc. 62-1, Aff. of Cloud, pp. 4-5).   Cloud & Tidwell employees, including the employee to whom the letter was given, had been trained to handle such letters, had been given training about the requirements of the FDCPA, and had been required to acquire a perfect score on a test about the FDCPA before being allowed to make collection calls.   (Doc. 2-1, Aff. of Cloud, p. 5).   The Isaacs' letter, however, was "somehow misplaced."   Id.   Although the letter was later located, there was "some confusion" because the address for the Isaacs did not appear in the Cloud & Tidwell system as they were not a debtor against whom Cloud & Tidwell had an active claim.   Id.   The result of the confusion was that the Isaacs' number was not immediately placed on the "do not call" list.   Id.   Cloud & Tidwell provides no evidence as to how much time elapsed between the time the "misplaced" letter was located and the time that the Isaacs' number was placed on the proper list, causing the calls to stop.   Cloud merely asserts that the number was "eventually located and then placed on our do not call list."   (Doc. 62-1, Aff. of Cloud, p. 5).   Plaintiffs testify that defendant Cloud & Tidwell, after receiving the cease-and-desist letter sent by the Isaacs, placed 51 more calls to them in the almost nine months from August 2011 to April 16, 2012.   (Doc. 44-1, pp. 11-12).

There is no evidence that any representative of Cloud & Tidwell ever spoke directly with either of the plaintiffs.   Five of the 51 calls complained of resulted in a voice-mail message being left on the plaintiffs' answering machine, but only one of the five messages is audible. (Complaint, Doc. 1, Ex. 10).[5]   The audible message, left on February 16, 2012, at 7:39 a.m., was: "Hello, this message is for Elva Whitman.   Please return the call to Barry at the law firm of Cloud

---

[5]      Defendant Cloud & Tidwell asserts that only one message was left on the Isaacs' answering machine, and that the message complied with the FDCPA.   But see fn. 16, infra.

& Tidwell in Birmingham.  It is important that you do so.  The number is 866 728 2098, extension 124.  Thank you."  (Doc. 44-1, § 22).  The call was made by Cloud & Tidwell employee Barry Brown.  The message did not state that Barry was a debt collector or was calling to collect a debt.  The Isaacs do not know Elva Whitman.  (Decl. of Rosetta W. Isaac, Doc. 44-2). Other than the cease-and-desist letter, the plaintiffs never informed anyone at Cloud & Tidwell that the calls were to a wrong number or that they did not know Elva Whitman.

Fifteen of the 51 calls were disconnected after the calls were answered by Mr. Isaac, who recited: "This call is being recorded.  Hello.  How may I help you?"[6]  (Complaint, Exhibits 8 and 9; Doc. 62-2, depo. of A. Isaac, pp. 129-130).  Cloud & Tidwell's automated dialing system does not leave a message when the phone is answered by voice mail.  (Aff. of Cloud, Doc. 62-1, p. 6). The other calls apparently were disconnected after there was no answer or after an answering machine answered the call.[7]

## DISCUSSION

The plaintiffs seek summary adjudication in their favor on grounds that the defendants violated the FDCPA in three ways: (1) by calling them with the intent to harass them in violation of

---

[6]   On a few occasions, Mr. Isaac also repeated "hello" after this statement, or asked "How may I help you Mr. Cloud & Tidwell" or "How may I help you this morning."  Each answered call, however, began with the statement: "This call is being recorded.  Hello.  How may I help you?"

[7]   The court is not clear as to whether the calls that were not answered by Mr. Isaac simply rang and went unanswered or were picked up by an answering machine.  Clearly, the Isaacs knew that the defendants called from both their telephone's caller ID system and from written records from their provider.

Section 1692d(5)[8] and (6)[9]; (2) by calling them after the defendants received cease-and-desist letters, which is violative of Section 1692c(c),[10] and (3) by failing to identify themselves as debt collectors in violation of Section 1692e(11).[11]   Defendants respond that there was no intent to harass, as indicated by the circumstances of the calls themselves.   They further assert that any

---

[8]   Section 1692d(5) prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number."

[9]   Section 1692d(6) prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity."

[10]   Section 1692c(c) provides:

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

(1) to advise the consumer that the debt collector's further efforts are being terminated;
(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification is complete upon receipt.

[11]   Section 1692e(11) describes one or several forms of prohibited misleading or deceptive means for collecting a debt, as follows:

The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

violation of the FDCPA which may have occurred was the result of "bona fide error" and was not intentional.   Both defendants contend that they are entitled to summary judgment in their favor because the violations were made in error, despite reasonable practices they implemented to prevent such violations, and because the calls were not made with any intent to harass.   The affirmative defense is based upon the bona fide error defense set forth in 15 U.S.C. § 1692k(c).

Plaintiffs further assert claims arising under Alabama law.   They contend that the defendants violated Alabama Code § 13A-11-8 in that the debt collectors called with the intent to harass them.   Finally, the plaintiffs assert that the defendants negligently supervised the employees who placed the calls.   The defendants assert that any claim based upon Section 13A-11-8 is misplaced as that statute is a criminal statute that provides no civil remedy.   The defendants further contend that the plaintiffs have failed to provide any evidence that either defendant acted negligently in supervising any agent or employee.

**1.   Fair Debt Collection Practices Act**

The FDCPA limits the methods that a debt collector may employ in seeking to collect a debt.   The Eleventh Circuit Court of Appeals has explained:

> In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).   The FDCPA prohibits, inter alia, debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."   Id. § 1692f.   Debt collectors may collect only amounts that are "expressly authorized by the agreement creating the debt or permitted by law."   Id. § 692f(1).   Moreover, "[a] debt collector may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt."
Id. § 1692e.

The FDCPA provides for a civil cause of action to enforce its provisions, with debt
collectors who violate the Act liable for actual damages, statutory damages up to
$1,000, and reasonable attorney's fees and costs. *See Edwards v. Niagara Credit
Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009) (citing 15 U.S.C.
§ 1692k(a)(1)-(3)).

Owen v. I.C. System, Inc., 629 F.3d 1263, 1270 (11th Cir. 2011).   In determining the amount of

liability that may exist in any FDCPA violation, the court considers "the frequency and persistence

of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which

such noncompliance was intentional."   15 U.S.C. § 1692k(b)(1).   Although liability under the

FDCPA is generally described as one of strict liability, there exists a "narrow carve-out to the

general rule of strict liability, known as the "bona fide error" defense.   Owen, 629 F.3d at 1271.

To prevail on a claim based on the FDCPA, a plaintiff must allege and prove that the

plaintiff is a "consumer" within the meaning of the statute; that the defendant is a "debt collector,"

and that the defendant has violated the act.   Salazar v. MFP, Inc., 847 F. Supp. 2d 1329, 1331

(M.D. Fla. 2012); 15 U.S.C. § 1692c(c).   In this case, none of the parties dispute that Mr. And

Mrs. Isaac are consumers and that RMB and Cloud & Tidwell are debt collectors as defined in 15

U.S.C. § 1692a(3) and (6).     Instead, the defendants contend that none of the calls made was with

any "intent to annoy, abuse, or harass" as required to violate Section 1692d(5) and that "hang-up"

or disconnected calls were the unintended product of software used to avoid leaving a message on

an answering machine.   The defendants further concede that placing calls after the receipt of the

cease-and-desist letters sent by plaintiffs constitutes a violation of 15 U.S.C. § 1692c(c), which

prohibits a debt collector from contacting a consumer if the consumer has, in writing, instructed the debt collector to cease further communication.   Defendant Cloud & Tidwell admits that it left a message on the Isaacs' answering machine, but asserts that the message comported with the identification requirements of Section 1692e(11).[12]   However, the defendants contend that any FDCPA violations alleged in the complaint were the result of bona fide error, which serves as a complete defense and relieves the defendants of liability.

The defendants rely upon 15 U.S.C. § 1692k(c),[13] which relieves the defendant of any liability where it "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."   A defendant invoking the bona fide error defense must demonstrate, by a preponderance of the evidence, that its violation of the FDCPA "(1) was unintentional; (2) was a 'bona fide' error; and (3) occurred despite the existence of procedures reasonably adapted to avoid violations of the FDCPA."   Salazar, 847 F. Supp. 2d at 1332, citing 15 U.S.C. § 1692k(c); Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1353 (11th Cir. 2009).   A debt collector need not show that its actions were unintentional, but merely that the

---

[12]      There is no allegation that RMB left any messages or spoke with anyone at the Isaac residence.

[13]      Section 1692k(c) states in full:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

13

FDCPA violation was unintentional.   Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1333 n. 6 (M.D. Fla. 2010).

While the question of whether the debt collector acted with an intent to annoy or harass is generally one for the factfinder,[14] the statutory language of § 1692(d)(5) requires a plaintiff asserting a harassment claim to come forward with some evidence that would support a finding that the defendant acted with an *intent* to harass or annoy.   Section 1692(d)(5) expressly makes it actionable for a debt collector to "[cause] a telephone to ring… with the intent to annoy, abuse, or harass any person at the called number."   Thus, a threshold plaintiffs must cross on their § 1692d(5) claim is the presentation of substantial evidence from which a reasonable factfinder could conclude that the repeated telephone calls made by RMB and Cloud & Tidwell were made "with the intent to annoy, abuse, or harass" someone at the called number.

Plaintiffs contend that the sheer number of calls made to them, even after they mailed cease-and-desist letters, is such proof.   The case relied upon by plaintiffs for this argument, Meadows v. Franklin Collection Service, Inc., 414 Fed. Appx. 230 (11th Cir. 2011), however, is distinguishable because Meadows involved 300 calls over nearly three years.   414 Fed. Appx. at 232.   The calls continued for more than two years *after* the plaintiff in Meadows informed the caller that the debts were not hers and the debtors did not live with her.   414 Fed. Appx. at 232. The calls were more frequent than the calls to the Isaacs, continued for years, and sometimes woke her from her sleep.   The plaintiff in Meadows did not complain that the debt collector took days or months to process her request to cease: she complained that the debt collector simply ignored her

---

[14]        In this case, none of the parties has made a jury demand.

request for almost three years – apparently until she filed a lawsuit.   414 Fed. Appx. at 233.   By contrast, the defendants in this case bungled the handling of the cease-and-desist letters, but ceased all communications or attempts as soon as the letters were processed, without any further action by the Isaacs.

Courts have recognized that the question of whether the debt collector had the intent to harass may, in some cases, be determined on summary judgment as a matter of law.   See, e.g., Stinson v. Receivables Management Bureau Inc., 2013 WL 1278966 *3 (N.D. Ala. March 26, 2013); Druschel v. CCB Credit Servs., Inc., 2011 WL 2681637 (M.D. Fla. 2011).   The court in Druschel further noted that even daily calls are not "continuous" or "repeated" under the definitions provided by the Federal Trade Commission.   2011 WL 2681637 *5, n.10, citing FTC Staff Commentary on the FDCPA, 53 FR 50097-02, 1988 WL 2629068 at *50105 (Dec. 13, 1988). Claims arising under Section 1692d must be viewed under a "least sophisticated consumer" standard, using the perspective of a consumer whose circumstances make him "relatively more susceptible to harassment, oppression, or abuse."   Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985).   Further, the legislative history of this provision makes clear that it was passed in response to "[c]ollection abuse [in the form of] obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer," and other threatening and intimidating tactics.   S. Rep. 95-382, P.L. 95-109, Consumer Credit Protection Act, Senate Report No. 95-382, August 2, 1977.

The court is persuaded that, at least with respect to plaintiffs' § 1692d(5) claim, there is no substantial evidence that the defendants intended to harass, annoy, or oppress the Isaacs.   At the

outset, the undisputed evidence shows that defendants were not attempting to collect *any* debt from the Isaacs themselves.   RMB was seeking to collect debts owed by the Isaacs' adult daughter and Mr. Isaac's mother.   The Isaacs' number was given to RMB by the debtors, with the adult daughter listing the number in the medical records of her treatment and with Mr. Isaac's mother expressly telling RMB to contact him concerning her debts.   RMB did not go looking for the Isaacs to upset them, but contacted them legitimately based on the information given by the debtors they were seeking.   Further, the calls made by RMB were not excessive, rude, or abusive. Except on two days, RMB never called more often than twice in one day, and that was only because its earlier call that same day was not answered.   A total of 21 calls over a period of 29 days, and then no more calls thereafter, standing by itself and without more, simply fails to show the requisite intent to annoy or harass to be actionable under § 1692d(5).

Likewise, Cloud & Tidwell were trying to collect a debt owed by a stranger, Elva Whitman, whose telephone number was similar enough to the Isaacs' that a mistaken transposition of numerals resulted in the Isaacs' number being erroneously added to the automated dialing system under Whitman's name.   Although Cloud & Tidwell called a total of 55 times, these calls occurred over a longer period of time, from July 25, 2011, to April 16, 2012, including a five-and-a half-month gap of no calls at all from early August 2011 to late January 2012.   Plaintiffs' own evidence establishes that Cloud & Tidwell never called more than once a day.   While it is true that plaintiffs mailed a cease-and-desist letter, Cloud & Tidwell "misplaced" the letter and was unable to match it to a debtor account due to the transposition error made inputting the telephone number. Cloud & Tidwell believed for months that it was calling someone named Elva Whitman, not Isaac. The evidence simply fails to show circumstances indicating the intent to harass or annoy.

16

Further, the defendants have offered undisputed evidence that the "hang-up" or disconnected calls they made to the Isaacs' home were the unintended product of software designed not to leave a message when a call is answered by an answering machine or voice mail. Plaintiffs contend that on a number of occasions when Mr. Isaac answered a call, the call would disconnect without anyone speaking to him, in violation of § 1692d(6). The Isaacs contend that the natural consequence of such events is to annoy or harass the person receiving the call. It appears to be undisputed that both defendants used automated dialers to make calls to debtors, and part of the software operating such dialers is designed to disconnect the call if the dialer detects the call being answered by an answering machine or voice mail, rather than a "live" person. Mr. Isaac admits that, when the caller ID on his telephone indicated that these defendants were calling, he would answer the phone saying, "This call is being recorded. Hello. How can I help you?" Such a long greeting would be interpreted by the software as an answering machine and the call would disconnect. There was no intent to make these calls with the intent to annoy or harass the Isaacs by hanging up. In any event, § 1692d(6) requires only a "meaningful disclosure" of the identity of the caller, and Mr. Isaac admits that he received that disclosure through his caller ID. Neither RMB nor Cloud & Tidwell attempted to block caller identification of their calls.[15] Thus, there was no violation of § 1692d(6).

---

[15] The court finds that the disclosure requirement of § 1692d(6) is met as long as the debt collector does not attempt to block caller ID of his call. It is not necessary that the debt collector remain on the line to disclose his identity further because doing so creates other risks for the debt collector under the FDCPA. Under § 1692e(11), if the debt collector remains on the call and identifies himself to what is believed to be an answering machine, the message must also disclose that the purpose of the call is to collect a debt. Making that disclosure, however, also runs the risk that someone other than the debtor will hear the message, amounting to communicating with a third person about the debt, potentially in violation of § 1692c(b). As the

But even assuming plaintiffs have made an adequate showing to create a dispute of fact concerning the intent of the defendants, the defendants still assert an affirmative defense of a "bona fide" error, on which they bear the burden of proof.   Defendants contend they have proven without dispute that they acted only out of error.   The bona fide error affirmative defense to all of these claims is discussed below.

a.   Defendant RMB

RMB has described the procedures it had in place to prevent violations of the FDCPA's prohibition against calling a consumer after the receipt of a cease-and-desist letter.   It has further described that the procedure did not prevent the violations, at least not for 17 days, because the two key employees who were in place to prevent the violations were both unavailable due to medical conditions, one on maternity leave and one due to an unexpected illness.   The evidence presented by RMB indicates that the calls that were made in violation of Section 1692c(c) were not intentional, and resulted from a bona fide error.   It is undisputed that, once the cease-and-desist letter was located and properly logged after 17 days, the calls ceased, without any further action by the Isaacs.   Moreover, the plaintiffs have not presented any evidence that RMB had an intent to "annoy, abuse, or harass" any person at the Isaacs' phone number, as is required to sustain a claim under Section 1692d(5).   The evidence provided by RMB persuasively shows that RMB was attempting to contact Mr. Isaac, at his mother's direction and request, in order to receive payments his mother agreed to make, or the Isaacs' daughter, who had provided the creditor with the Isaacs' home telephone number.   A careful examination of all of the evidence provided by both RMB and

Eleventh Circuit noted in <u>Edwards v. Niagara Credit Solutions, Inc.</u>, 584 F.3d 1350 (11th Cir. 2009), the debt collector may choose not to leave a message.

plaintiffs, including purported recordings of all of the phone calls, simply do not support a finding

that the calls were made with the intent to annoy, abuse or harass plaintiff.    Similarly, any failure

to make a verbal disclosure as to the identity of the caller (the alleged violations of § 1692e(11)

was clearly based upon RMB's assumption, albeit erroneous, that the call had been answered by a

machine and not by a "live consumer."

Plaintiffs have not disputed any of the facts relating to the procedures for avoiding

violations that were presented in RMB's motion for summary judgment. (Doc. 68).    The

plaintiffs' evidence is not sufficient to overcome RMB's well supported motion for summary

judgment based upon the bona fide error defense.    Accordingly, the plaintiffs' motion for

summary judgment as to RMB's calls is due to be denied, and  RMB's motion for summary

judgment as to all of plaintiffs' claims against RMB arising under the FDCPA is due to be granted.

    b.  Defendant Cloud & Tidwell

Cloud & Tidwell asserts the same bona fide error defense.    Because it took Cloud &

Tidwell almost nine months to place the Isaacs' telephone number on the do-not-call list, and

involved over 50 calls, this assertion of the defense requires more scrutiny.   Even though a close

examination of the number of calls, the pattern of the calls, and the timing of the calls, fails to

reveal any "indicia of the type of egregious conduct" that raises a question of fact or "evinces an

intent to annoy, abuse or harass" for purposes of a claim under § 1692d(5), Carman v. CBE Group,

Inc., 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011), the continuation of calls made after Cloud &

Tidwell received the plaintiffs' cease-and-desist letter constituted a violation of § 1692c(c),

regardless to Cloud & Tidwell's intent, unless Cloud & Tidwell can show by a preponderance of

the evidence that the calls were a bona fide error "notwithstanding the maintenance of procedures

19

reasonably adapted to avoid any such error."   15 U.S.C. § 1692k(c).   The plaintiffs do not dispute the defendant's assertion that it had procedures in place to avoid such errors, but the undisputed evidence raises genuine questions whether such procedures were "reasonably adapted" to prevent the error.

Cloud & Tidwell received the cease-and-desist letter on August 1, 2011, as evidenced by Brian Cloud's signature on the certified mail receipt.   The call records offered by the plaintiffs show that Cloud & Tidwell stopped making calls to the Isaacs after August 4, 2011, for a period of five and a half months, until January 24, 2012, when the calls started again.   Although Cloud & Tidwell maintains that it had procedures in place to handle and process cease-and-desist letters, this particular letter was "misplaced" for an unspecified period of time by the employee responsible for processing such letters.   Further, once the letter was found sometime later, unexplained "confusion" about the letter further delayed putting the Isaacs' number on the "do not call" list.

Bearing in mind that the defendant has the burden of proving its affirmative defense and, consequently, on summary judgment, must show the facts supporting the defense are undisputed, the court cannot say that Cloud & Tidwell has done so here.   To claim the bona fide error defense, a debt collector must show that an error occurred even though it has in place procedures "reasonably adapted" to prevent the error.   Even assuming an error occurred here (as distinct from intentional conduct), the evidence is simply too thin and too ambiguous to allow the court to decide as a matter of law that Cloud & Tidwell's procedures "reasonably" attempted to prevent the error of misplacing or mishandling a cease-and-desist letter, or being unable to link the letter to a telephone number in the automated dialer.   The pattern of calls made to the Isaacs shows that

something prompted Cloud & Tidwell to *stop* calling the Isaacs' number for over five months, only for the calls to begin again in late January 2012.   Was it the cease-and-desist letter that did so?   If so, why did the calls begin again a few months later?   Because the cease-and-desist letter expressly identified the Isaacs' telephone number, what "confusion" prevented Cloud & Tidwell from promptly putting it on the "do not call" list?   These questions remain unaddressed by any by evidence of Cloud & Tidwell's procedures shown to the court.   For these reasons, the court cannot say as a matter of law that Cloud & Tidwell has carried its burden of proving the bona fide error defense at this stage of the case.   Cloud & Tidwell's motion for summary judgment as to the plaintiffs' § 1692c(c) claim must be denied.

The only remaining issue under the FDCPA is whether the Act was violated when Cloud & Tidwell employee Barry Brown left a voice message on February 16, 2012, in which he did not identify himself as a debt collector, or when four other "inaudible" messages were left on the Isaacs' answering machine.   The FDCPA specifically requires that a debt collector disclose in any communication with a debtor that the message is from a debt collector for the purpose of collecting a debt.   15 U.S.C. § 1692e(11).   The Eleventh Circuit Court of Appeals examined the requirements of Section 1692e(11) in the context of messages left on answering machines in Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350 (11th Cir. 2009).   In Edwards, a debt collector seeking the safety of the bona fide error exception argued that it intentionally left out of its message that it was a debt collector seeking to collect a debt because the message might be heard by a third party and might then run afoul of another section of the FDCPA.   584 F.3d at 1351, citing 15 U.S.C. § 1692c(b).   Nothing in the FDCPA, the court of appeals explained, gives a debt collector the right to leave a voicemail message, or exempts a debt collector from making the

requisite disclosures if a message is left.   584 F.3d at 1354.   Other courts have examined whether telephone calls from a debt collector were intended to harass the consumer when the debt collector chose not to leave a message when an answering machine is reached and have found nothing "harassing, oppressive, or abusive" about the practice.   Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d 1135, 1143-44 (D. Kan. 2004).   Thus, when a debt collector's call is answered by an answering machine or voice mail, the collector can elect to leave no message at all, see Udell, *supra*, or leave a message with the required disclosures, see Edwards, *supra*.   He may not leave a message lacking the required disclosures.

The Isaacs have presented evidence (not disputed by defendants) that Cloud & Tidwell left at least one message on their answering machine that did not include the requisite disclosure of its identity as a debt collector.[16]   Cloud & Tidwell has not asserted that its failure to make such disclosures in the message left on the Isaacs' machine was unintentional, but, rather, and the result of a bona fide error as defined in the FDCPA.   Because it is undisputed that the voice message left by Barry Brown did not include the required disclosure, Cloud & Tidwell can escape liability for it only by showing that the message was a bona fide error that occurred despite its maintenance of procedures "reasonably adapted" to prevent such errors.   Although Cloud & Tidwell has offered evidence that it trains its employees on the requirements of the FDCPA and tests them to be sure they understand the requirements before being allowed to make collection calls, this evidence fails

---

[16]     Cloud & Tidwell has not disputed plaintiffs' evidence concerning the content of the voice mail message left on February 16, 2012, but contends that the message fully complied with the FDCPA.   (See Aff. of Cloud, Doc. 62-1, p. 6).   This is simply wrong.   Section 1692e(11) requires a debt collector to disclose in oral communications that his purpose is to collect a debt and that any information obtained in the communication will be used for that purpose.   The voice mail message left on February 16, 2012, simply does not include anything close to such a disclosure.

to explain sufficiently how the training is "reasonably adapted" to prevent such errors as leaving messages without disclosures.   The court cannot say as a matter of law, on the basis of this evidence, that Cloud & Tidwell's procedures are "reasonably adapted" to prevent the mistake as required for the bona fide error defense under § 1692k(c), and its motion for summary judgment on this claim is due to be denied.

The inaudible messages left on the Isaacs' answering machine cause less concern because they are effectively the same as a disconnected call, where no intelligible message is left at all.   As noted by Edwards, debt collectors are not required to leave voice mail messages, but if they do, the message must include the disclosures required by § 1692e(11).   Inaudible messages – messages that simply cannot be heard in any meaningful way – are the same as no message being left.   An inaudible message does not result in the type of misleading or abusive conduct that messages with no disclosures accomplish.   Because the message is inaudible, the debt collector gains no unfair advantage, such as urging the person to whom the call is directed to return the call or supply personal information without knowing that it is from a debt collector, nor does it mislead the recipient about the nature of the call.   Because a recipient is not harmed by an inaudible call, it is effectively the same as a disconnected call.   Thus, the fact that Cloud & Tidwell left four other inaudible messages does not raise a claim under the FDCPA.

Having that Cloud & Tidwell has not carried its burden of proving the applicability of the bona fide error defense to the plaintiffs' § 1692e(11) claim as a matter of law because there remain genuine issues of material fact concerning the reasonableness of Cloud & Tidwell's procedures for avoiding such an error, the court will deny Cloud & Tidwell's motion in this claim, as well as the Isaacs' motion seeking summary judgment as to liability on the claim.   The motions make clear

23

that the facts underlying the February 16 voice mail are undisputed, and the strict-liability nature of the § 1692e(11) claim would mandate a finding of liability on the claim unless Cloud & Tidwell can overcome it with the affirmative defense.   Cloud & Tidwell bears the burden of proof on the defense,[17] and thus, under Rule 56, the defendant must come forward with substantial evidence supporting its assertion of the defense.   Although Cloud & Tidwell has offered evidence, there remain genuine issues of material fact relating to how Cloud & Tidwell's procedures were "reasonably adapted" to avoid or preclude the error that occurred here.[18]   In light of those genuine issues, neither party is entitle to summary judgment on the § 1692e(11) claim grounded on the February 16 voice mail message.

Cloud & Tidwell's motion for summary judgment is due to be denied, therefore, as to plaintiffs' claim under § 1692e(11), relating to the February 16, 2012, voice mail message, and as to plaintiffs' claim under § 1692c(c) relating to calls made to their home after August 1, 2011.

---

[17]   Cloud & Tidwell's Supplement Brief (Doc. 62-4) seems to assume that the plaintiffs have the burden of proving that its policies and procedures are not "reasonably adapted" to prevent errors under the FDCPA.   This is mistaken.   The bona fide error defense provided in § 1692k(c) plainly puts the burden of proof on the debt collector to establish the reasonableness of its procedures.   By the express language of the section, the defense is available "if the debt collector shows by a preponderance of evidence…" the elements required.   The plaintiffs, therefore, are not required to disprove the reasonableness of Cloud & Tidwell's procedures; rather, Cloud & Tidwell must affirmatively prove that their procedures are "reasonably adapted" to prevent errors.

[18]   For example, although Cloud & Tidwell offered evidence that its employees are trained in the requirements of the FDCPA, the evidence gives no detail about the nature of the training on such questions as whether and how to leave a voice mail message that complies with the Act.   Indeed, given Cloud & Tidwell's invocation of the uncertainty in the law concerning whether and how a voice mail message can be left on a debtor's phone (see Supp. Brief, Doc. 62-4, pp. 13-14), it seems unlikely that its employees have been given any training on this point.   In any event, Cloud & Tidwell has not presented the court with evidence of such training and, thus, the court cannot say as a matter of law that its policies and procedures are "reasonably adapted" to avoid such an error.

Whether these claims can be defeated by defendant's bona fide error defense under § 1692k(c) will require a trial.

### 2.   Negligent Supervision

Plaintiffs allege that both defendants "failed to monitor the activities of their employees" and are thus liable for negligent supervision.   Both defendants have moved for summary judgment in their favor of this claim, asserting that plaintiffs have failed to offer any evidence of the elements of negligent supervision.   Under Alabama law, negligent supervision has been described as follows:

> "'In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.   Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.   It is incumbent on the party charging negligence to show it by proper evidence.   This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice.   While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.'"

Armstrong Business Services, Inc., v. AmSouth Bank, 817 So. 2d 665, 682 (Ala. 2001); Big B, Inc. v. Cottingham, 634 So.2d 999, 1003 (Ala. 1993) (quoting Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098, 1100 (Ala.1983) (quoting Thompson v. Havard, 285 Ala. 718, 725, 235 So.2d 853 (1970))).   The Alabama Supreme Court has further noted that it is "not sufficient

merely to allege, or to show, that the employee acted incompetently," and that a claim must be supported "'by affirmative proof' that the employer actually knew of the incompetence" or should have known of it.   817 So. 2d at 683.

In this case, the plaintiffs have failed to demonstrate any notice to RMB or Cloud & Tidwell of any specific acts of negligence on the part of any particular employees.   There simply is no evidence offered by the plaintiffs showing that RMB or Cloud & Tidwell knew or should have known that calls being made by an automated dialing system or that a single call in which a voice message was left were not legitimately part of a lawful effort to collect a debt.   As in Armstrong, the plaintiffs' evidence that mistakes were made "do not amount to proof" of negligent supervision.   817 So. 2d at 683.   Accordingly, both defendants are entitled to summary judgment in their favor on the claim of negligent supervision.


### 3.   Harassing Communication

Plaintiffs allege that the defendants are liable for a violation of Alabama Code § 13A-11-8(b)(1)(a) and (b).   As the defendants point out, the violation alleged is one of criminal law, and fails to set forth any claim for relief in a civil action.   Counts that "do no more than allege that the defendants violated a criminal statute and that the plaintiffs were damaged ... do not state a claim and are due to be dismissed."   Burchfield v. Industrial Chemicals, Inc., 2012 WL 5872808, *4 (N.D. Ala., Nov. 16, 2012).   Even if the claim (Count Six of the Complaint) could be read as setting forth a civil cause of action, it alleges an intentional tort, and the plaintiffs have failed to provide any evidence that either defendant had the intent to harass the plaintiffs.   For these

reasons, the motions for summary judgment filed by RMB and Cloud & Tidwell as to the claim for criminal harassment are due to be granted.

## **CONCLUSION**

Accordingly, consistent with the foregoing discussion of the evidence presented by all three parties in support of and in opposition to the motions for summary judgment, this court determines that there exists no genuine issue of material fact and that the defendant RMB is entitled to summary adjudication on all of the plaintiffs' on claims; all claims against RMB will be dismissed with prejudice.

Further, the court finds that defendant Cloud & Tidwell is entitled to summary judgment only with respect to plaintiffs' claims that calls were made in violation of the § 1692d(5) prohibition against calling a consumer with the intent to harass or annoy (Count 1), and that "hang-up" or disconnected calls without meaningful disclosure of the caller's identity in violation of § 1692d(6) were made (Count 4), and with respect to the state-law claims of negligent supervision (Count 5) and harassing communications (Count 6). These claims will be dismissed with prejudice. Cloud & Tidwell's motion for summary judgment will be denied, however, as to plaintiffs' claims under § 1692c(c) and § 1692e(11), respectively, that calls were made to the Isaacs after receipt of a cease-and-desist letter (Count 2) and that an oral message was left on their answering machine without required disclosures that the call was from a debt collector (Count 3).

Finally, plaintiffs' motion for summary judgment is due to be denied in its entirety.

A separate order will be entered granting and denying the motions in accordance herewith.

The Clerk is DIRECTED to mail a copy of the foregoing to the plaintiffs.

Done the 26th day of March, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE